IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHARLES D. JURBALA, )<br>)<br>Defendant. ) | Criminal Action No. 04-94-GMS |

**MEMORANDUM**

**I.     Introduction**

On March 15, 2005, a jury convicted Charles Jurbala of possessing of a firearm in violation of 18 U.S.C. § 922(g)(1) (2000).  Subsequently, Jurbala filed a motion for judgment of acquittal notwithstanding the verdict pursuant to Fed. R. Crim. Proc. 29(c).  (D.I. 33.)  For the following reasons, the court will deny the motion and uphold Jurbala's conviction.

**II.    Background**

Following a two-day jury trial, Charles Jurbala was found guilty of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1). (D.I. 32 at 216.)  The government's evidence was primarily supplied by Detective Dewey Stout of the Delaware State Police.  According to Stout, while he was driving back to the police station at around 2:00 a.m. on July 13, 2004, he spotted a white male wearing a heavy winter coat looking into a Wawa convenience store.  (Id. at 25:19-24.) Because the individual was wearing such a heavy coat in the middle of summer, Stout became suspicious and proceeded to drive into the Wawa parking lot.  (Id. at 25:22-24, 29:2.)  At that point, the individual, who Stout identified in court as Jurbala, walked to the rear of the store.  (Id. at 32:15-24, 29:3-4.)  Stout then drove to a nearby parking lot so he could observe the scene.  (Id. at 29:16-18.)  Stout said he witnessed Jurbala walk from the back of the store to the front of the store three

times, each time pausing briefly to look in the front window before walking back. (Id. at 29:22-25.) After about three minutes, Stout drove back to the Wawa parking lot to look for any objects on the ground, but he did not see anything. (Id. at 30:15-17, 31:18-21.)

After he drove by the rear of the building, Stout said he intended to stop Jurbala. (Id. at 31:22-24.) However, Jurbala began to leave the area and Stout decided not to pursue him. (Id. at 31:25-32:5.) But as Stout drove away, he looked in his rearview mirror and saw Jurbala headed back toward the store. (Id. at 33:10-13.) This prompted Stout to return to the Wawa as well, where he pulled up to within a car length of Jurbala at the rear of the store. (Id. at 33:14-34:10.) Stout testified that he exited his vehicle and identified himself to Jurbala as State Police. (Id. at 36:1-4.) As Stout approached Jurbala, he (Stout) noticed that Jurbala's hands were tucked underneath the front of his jacket. (Id. at 36:15-19.) Stout twice directed Jurbala to take his hands out of his jacket, and Jurbala momentarily complied after the second request. (Id. at 36:19-24.) When Jurbala put his hands back under his coat, Stout again directed Jurbala to remove them. (Id. at 36:24-25.) Instead of complying as he had before, Jurbala ran. (Id.) Stout testified that he immediately grabbed Jurbala by the coat and tried to throw him to the ground. (Id. at 37:1-4.) Stout was unsuccessful because Jurbala slipped out of his coat and began to run again. (Id. at 37:4-6.) Jurbala made only a few steps before Stout was able to grab him by the shirts he was wearing. (Id. at 37:11-15.) Once again, Stout was unsuccessful in throwing Jurbala to the ground because he slipped out of his shirts. (Id. at 37:16-17.) Stout then tackled Jurbala and the two began to fight. (Id. at 37:4-13.) Stout was eventually able to pin Jurbala and call for back up. (Id. at 37:11-17.) Stout intended to keep Jurbala pinned without handcuffing him until reinforcements arrived. (Id. at 37:18-25.) However, while he was waiting, two passers-by offered their assistance. (Id. at 39:4-12.) Stout accepted, and handed

one of them his pepper spray with instructions to spray Jurbala in the event that he should resist or attempt to flee while he was being handcuffed. (Id. at 39:12-19.)

Either shortly before or shortly after Jurbala was handcuffed, Stout noticed a gun on the ground six to eight feet away, where the fight had begun. (Id. at 41:7-17.) Stout denied that he saw the gun in Jurbala's possession, or that he heard the gun fall to the pavement during the struggle. (Id. at 42:10-18.) However, in addition to the gun, Stout also saw a pack of cigarettes very near the gun, and the two shirts somewhat farther away. (Id. at 41:18-24.) By his estimation, all of the items – the gun, the cigarettes, and the shirts – were within five feet of each other. (Id. at 41:25-42:3.) Evidently, Jurbala also saw the gun at that time because he told Stout numerous times to tell the officers who had just arrived that the gun was not his. (Id. at 44:14-18.) As Stout walked the handcuffed Jurbala to the building to have him sit with his back against the wall, Jurbala asked of Stout, "Can I at least get my cigarettes?" (Id. at 44:19-24.) Stout testified that he responded by saying, "So the coat's yours, the shirt's yours, the cigarettes are yours but the gun's not yours?" (Id. at 44:25-45:4.) Jurbala replied, "Yeah, tell them the gun's not mine." (Id. at 45:4-5.)

Stout then retrieved the gun, cleared its chamber, and placed it in his vehicle. (Id. at 45:9-19.) Once he took Jurbala back to the police station, Stout entered the gun into the station's evidence locker. (Id. at 45:20-23.) At trial, Stout identified a gun in evidence as the gun he recovered from the ground that night. (Id. at 47:25-49:6.)

### III. Standard of Review

In deciding a motion for judgment of acquittal under Fed. R. Crim. P. 29(c), the court views the evidence in the light most favorable to the government. *United States v. Gambone*, 314 F.3d 163, 169-70 (3d Cir. 2003). The jury verdict will stand if there is substantial evidence, either direct

or circumstantial, to support the conviction. *Id.*; *see also United States v. Cohen*, 455 F.Supp. 843, 852 (E.D.Pa. July 18, 1978), *aff'd*, 594 F.2d 855 (3d Cir. 1979). The defendant cannot prevail by raising questions as to the weight of the evidence or the credibility of the witnesses. *Cohen*, 455 F.Supp. at 852.

**IV.   Discussion**

In support of his motion for judgment of acquittal, Jurbala argues that there was insufficient evidence presented at trial from which a jury could have concluded beyond reasonable doubt that he ever possessed the firearm found in the Wawa parking lot. To this end, Jurbala points out that the government failed to adduce any direct evidence of possession. (D.I. 33 at 12.) In fact, Stout admitted at trial that he neither saw the gun in Jurbala's possession, nor heard the gun fall to the pavement. Thus, Jurbala is correct that his conviction was not based on direct evidence.

Nevertheless, a conviction can be sustained in the absence of direct evidence if a reasonable jury could have found the defendant guilty beyond a reasonable doubt based on the circumstantial evidence alone. Here, too, Jurbala argues that his conviction cannot be sustained because the circumstantial evidence was insufficient in several respects. First, he contends that Stout's testimony was so undermined by his own inconsistent statements and by the testimony of other witnesses that no reasonable jury could have concluded that Jurbala ever possessed the gun. (Id. at 11-12.) For example, neither of the passers-by who came to Stout's aid actually saw the gun on the ground. (Id. at 131:21-22, 148:18-149:1.) Instead, they both testified that they saw the gun for the first time when Stout was handling it. (Id. at 132:12-19, 145:14-146:3.) The passers-by also recalled that Stout told them that he found the gun in the jacket, not on the pavement. (Id. at 132:19-23, 146:7-11.) As another example of the detective's lack of credibility, Jurbala points to Stout's

previous under-oath admission that he had not received fingerprint results from the gun as of September 2, 2004. (Id. at 72:24-25:10.) Yet, the detective who performed the fingerprint analysis testified that he had put the report on Stout's desk on July 28, 2004. (Id. at 95:16-22.) The court need not explore in detail the possible explanations for these apparent testimonial inconsistencies – that is the precise reason a jury was empaneled. *See Cohen*, 455 F. Supp. at 852 ("In reviewing testimony for determining a Rule 29 motion, questions of the weight of the evidence or of the credibility of the witnesses are foreclosed by the jury's verdict."). Suffice it to say, the court does not agree with Jurbala's assertion that the alleged inconsistencies are sufficient to render the jury's verdict unreasonable.

The circumstantial evidence is also insufficient, according to Jurbala, because his fingerprints were not found on the gun. (D.I. 33 at 6.) In fact, Stout admitted in open court that his first priority in handling the gun was not preserving fingerprints, but rather clearing the chamber of any ammunition. (D.I. 32 at 45:9-14.) On cross examination, he further testified that he did not wear plastic gloves when he handled the gun (id. at 69:19-23), and that Jurbala was not wearing gloves either (id. at 60:11-21). However, the government elicited important testimony from the evidence detective who later analyzed the gun, who said, in his experience, fingerprints are only found on about twenty-five percent of the guns that he examines. (Id. at 91:16-19.) Given that testimony, it would have been entirely reasonable for the jury to disregard the fact that Jurbala's fingerprints were not found on the gun. Therefore, since it is improper for the court to re-weigh the evidence post-verdict, *Cohen*, 455 F.Supp. at 852, Jurbala's argument is unavailing.

Jurbala also points out that the government presented no evidence regarding the ownership or registration of the gun. (D.I. 35 at 1-2.) He argues that this evidentiary gap forced the "fact

finder to speculate about important facts such as who was the last registered owner of the firearm and that information bearing on how or why the subject gun was recovered in the rear parking lot of the Wawa store." (Id. at 2.) Although the government certainly bears the burden of proof at trial, proving ownership and/or registration of the gun is not an element of the offense for which Jurbala was convicted. Thus, his argument in this regard is not persuasive.

Finally, Jurbala argues that the evidence supporting his conviction is legally insufficient under controlling Third Circuit precedent. (D.I. 33 at 12-15.) In *United States v. Jenkins*, the police entered an apartment and discovered the defendant, who was not a resident of the apartment, sitting on a couch wearing only his boxer shorts and a t-shirt. 90 F.3d 814, 816 (3d Cir. 1996). Also seated on the couch was one of the apartment's similarly-clad tenants. *Id.* at 816-17. "On the coffee table before them were three bags of white powder containing a total of 55.3 grams of cocaine and 42 grams of non-cocaine white powder, two triple-beam scales, two loaded .38 caliber revolvers, small ziplock-style bags, clear plastic vials, and numerous red caps. On the floor was a loaded sawed-off shotgun." *Id.* at 816. The police found no evidence that either man had been working with the cocaine, or that the apartment contained all the necessary equipment to cut and repackage the cocaine. *Id.* at 816-17. Furthermore, the defendant was cooperative and made no effort to hide or destroy the contraband. *Id.* at 817. Nevertheless, a jury convicted the defendant of possession and the district court upheld the conviction on a post-trial motion for acquittal. *Id.* A divided panel of the Third Circuit reversed, stating that "[w]ithout other proof of dominion and control, we can only conclude that it was sheer happenstance that Jenkins was seated on the couch next to the cocaine when the police entered the apartment." *Id.* at 820. The court explained that "[s]ome additional evidence of dominion and control is required before a finding of constructive possession can be

made," because "[a] reasonable jury may not infer dominion and control beyond a reasonable doubt from the defendant's physical distance from the drugs alone." *Id.*

Jurbala argues that his mere proximity to the firearm found in the Wawa parking lot is similarly insufficient to support an inference of possession, i.e., dominion and control. However, Jurbala ignores several distinguishing facts between his case and *Jenkins*. For example, Stout found the firearm in close proximity to other items to which Jurbala claimed ownership, whereas in *Jenkins*, there was no evidence that the defendant owned anything near the contraband. Furthermore, unlike the defendant in *Jenkins*, Jurbala attempted to flee when he was approached by Stout. Stout also searched the pavement before approaching Jurbala and did not see a firearm on the ground. But after the struggle, he found the firearm within five feet of Jurbala's other possessions. (Id. at 41:25-42:3.) No such before and after search was performed in *Jenkins*. Moreover, Jurbala's argument that Stout's prior search of the pavement was insufficient is just that: argument. The court is unable to find a single question asked of Stout concerning the thoroughness of his search. The only testimonial evidence in the record is that a search was done before the incident. Therefore, the lack of an evidentiary basis leaves the court with no other choice but to assume the search was not inadequate. Finally, the circumstances in which Stout encountered Jurbala (e.g., a man wearing a heavy coat during the summer, and looking into a convenience store in the middle of the night) are far more suspicious than the circumstances in *Jenkins* (e.g., a man sitting on a couch in his boxer shorts). Consequently, the evidence presented in this case was far stronger than the evidence presented in *Jenkins*. Thus, the law of that case affords Jurbala no relief.

**V.     Conclusion**

      Because Jurbala has not met his burden of showing that the evidence presented at trial was insufficient to support his conviction, the court will deny his motion.

Dated: September 14, 2005                          /s/ Gregory M. Sleet
                                                          UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | Criminal Action No. 04-94-GMS |
| ) | |
| CHARLES D. JURBALA,     ) | |
| ) | |
| Defendant.     ) | |

## **ORDER**

IT IS HEREBY ORDERED THAT:

The defendant's motion for judgment of acquittal notwithstanding the verdict (D.I. 33) be

DENIED.

Dated: September 14, 2005          /s/ Gregory M. Sleet
                                                              UNITED STATES DISTRICT JUDGE