IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHARLES D. JURBALA, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 08-47-GMS |
| | ) | Cr. A. No. 04-94-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

## MEMORANDUM OPINION

Charles D. Jurbala. *Pro se* movant.

Christopher J. Burke, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

Feb 25, 2011
Wilmington, Delaware

SLEET, Chief Judge

## I. INTRODUCTION

Movant Charles D. Jurbala ("Jurbala") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 51; D.I. 60.) The Government filed its answer in opposition. (D.I. 73.) For the reasons discussed, the court will deny Jurbala's § 2255 motion as meritless without holding an evidentiary hearing.

## II. BACKGROUND

In September 2004, the federal grand jury for the District of Delaware returned a one-count indictment charging Jurbala with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) & (a)(2).[1] (D.I. 2.) Following a two-day trial in March 2005, a jury found Jurbala guilty of the single count. The court sentenced Jurbala to a term of 235 months imprisonment, four years of supervised release, and a $100.00 special assessment. Final judgment was entered on September 12, 2005. (D.I. 42.)

The Court of Appeals for the Third Circuit affirmed Jurbala's conviction and sentence on October 11, 2006. (D.I. 50.) Jurbala filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on January 22, 2007. *See Jurbala v. United States*, 549 U.S. 1186 (2007).

Jurbala filed a § 2255 motion in January 2008 (D.I. 51.), a supporting memorandum in March 2008 (D.I. 60.), and an amended § 2255 motion in April 2008 (D.I. 63.). Jurbala then filed a letter motion (D.I. 71.) with the court asking it to disregard his amended motion (D.I. 63.)

---

[1] Jurbala was convicted of a felony in the Delaware Superior Court on September 5, 2001. (D.I. 33, at p. 1.)

1

The court granted Jurbala's request and ordered the government to file a response to Jurbala's original motion and memorandum. (D.I. 72.) After obtaining the affidavit of defense counsel, the government filed a supplemental response in opposition, to which Jurbala filed a reply. (D.I. 73; D.I. 74.)

## III. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As explained below, the record conclusively demonstrates that Jurbala is not entitled to relief for the claims asserted in his § 2255 motion. Accordingly, the court concludes that an evidentiary hearing is not warranted.

## IV. STANDARD OF REVIEW

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1988). Consequently, a movant is procedurally barred from asserting a claim in a § 2255 motion that he could have, but failed to, raise on direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982). A movant may, however, overcome such a procedural default and obtain review of a claim's merits by demonstrating cause for, and actual prejudice resulting from, the default, or that he is actually innocent. *Id.* at 167. To establish "cause," the movant must show that some external impediment prevented counsel from raising a claim. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). In turn, a movant establishes "prejudice" by showing that the error resulted in the

movant's actual and substantial disadvantage, "infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Conversely, an ineffective assistance of counsel claim is properly raised in a § 2255 motion rather than on direct appeal. *See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996). In order to prevail on an ineffective assistance of counsel claim, the movant must satisfy the two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, the movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, the movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Strickland*, 466 U.S. at 689.

## V. DISCUSSION

Jurbala asserts the following seven claims: (1) defense counsel failed to call Melissa Wilson as a witness; (2) counsel failed to call an expert witness to rebut the prosecution's expert testimony regarding fingerprint testing on the firearm at issue; (3) counsel failed to cross-examine Detective Stout about the firearm's history; (4) counsel should have more vigorously cross-examined Detective Stout about the nature of a visual search the detective conducted in the parking lot where the firearm was found; (5) counsel failed to investigate the Wawa surveillance

3

tapes and failed to obtain the weather report for the date of the offense; (6) counsel erred in calling Mr. Carroll III and Mr. Carroll IV as witnesses; and (7) the prosecutor's improper statement during closing deprived Jurbala of a fair trial, and counsel rendered ineffective assistance by failing to raise this issue on direct appeal. (D.I. 60; D.I. 73.)

## A. Factual background[2]

During Jurbala's trial, the government called Delaware State Police Detective Dewey Stout as a witness. According to Detective Stout's testimony, he was driving to the police station at about 2:00 a.m. on July 13, 2004 when he spotted a male standing outside a Wawa convenience store. The man, later identified as Jurbala, was looking into the store through the front window, and Detective Stout explained that Jurbala looked suspicious because he was wearing a heavy winter coat in the middle of the summer when it was not raining. Consequently, Detective Stout drove into the Wawa parking lot and, as he did so, Jurbala walked to the outside rear of the store. Detective Stout then exited the Wawa parking lot and parked his car in another nearby parking lot. From his car, Detective Stout saw Jurbala walk to the front of the Wawa three different times, look into the store's window, and then walk to the back of the building. Detective Stout testified that he then drove back into the Wawa parking lot and looked to see if there were any objects on the ground that would provide any further insight as to what Jurbala was doing there. The parking lot, both in the front and the rear of the store, was lit by the store's lights and by streetlights. Detective Stout saw no objects on the ground during this search.

---

[2]The facts are summarized from the trial transcript (D.I. 32.), Jurbala's motion for acquittal (D.I. 33.), and the government's response to the instant § 2255 motion (D.I. 73.).

4

As Detective Stout drove through the parking lot, Jurbala walked out of the parking lot toward a nearby road. Stout exited the Wawa parking lot and drove past Jurbala, who was now crossing the road. As his car passed Jurbala, Stout looked in his rear-view mirror and saw Jurbala immediately turn back and walk towards the Wawa. Again, the detective turned his car around and drove into the Wawa parking lot, where he saw Jurbala stop first at the front of the store and then walk to the back of the store. Detective Stout pulled his car up near Jurbala at the rear of the Wawa, exited the vehicle, and identified himself as a Delaware state police officer.

Detective Stout testified that Jurbala had his hands tucked underneath his jacket, and that he twice asked Jurbala to put his hands outside the jacket where the detective could see them. Jurbala complied with Stout's second request, but only briefly took his hands out the jacket and then placed them underneath the jacket again. Detective Stout asked Jurbala to remove his hands a third time, at which point Jurbala turned and started to run away. Detective Stout grabbed Jurbala by his coat, and swung him in circles in an attempt to throw him to the ground. Jurbala slipped out of the coat, which came off over his head. Stout then grabbed Jurbala by the two long-sleeved shirts and tank top that he was wearing, again trying to throw Jurbala to the ground. Jurbala slipped out of the shirts and tried to run, at which time Stout tackled him and was able to subdue him sufficiently so that he could call for back up from his fellow officers.

Before the additional police officers arrived, two civilian passers-by came up to Detective Stout and offered their assistance. Detective Stout handed one of the men a can of pepper spray, explaining that he was going to flip Jurbala over in order to handcuff him. After instructing the man to spray Jurbala in the face if it looked like he was trying to get away, Stout handcuffed

Jurbala. Detective Stout testified that, prior to the two passers-by coming and offering their help, he saw no one else in the rear of the Wawa other than Jurbala.

Either just before or just after he handcuffed Jurbala, Detective Stout observed a gun lying on the ground of the parking lot, near the spot where the detective and Jurbala had first begun to fight. The gun was located approximately six to eight feet from where Jurbala was handcuffed. Detective Stout explained that a pack of cigarettes was lying right next to the gun on the parking lot pavement, and that Jurbala's coat and shirts were lying within five feet of the gun.

After other police officers arrived on the scene, Detective Stout walked Jurbala over to the Wawa so that he could sit up against the back of the building. As he did so, Jurbala asked Detective Stout to tell the other officers that the gun did not belong to him. Jurbala also asked Stout, "Can I at least get my cigarettes," indicating that his cigarettes were those that were lying next to the gun. Detective Stout replied by stating, "So, the coat's yours, the shirts [are] yours, the cigarettes are yours, but the gun's not yours?" Jurbala replied, "Yeah, tell them the gun's not mine." Detective Stout testified that he then recovered the gun, a Mauser-Werke .32 caliber handgun.

The government also called Detective John Ubil and forensic latent print examiner Rodney Hegman of the Delaware State Police to testify about the recovery of fingerprints. Detective Ubil explained that he tested the Mauser-Werke firearm for fingerprints and could not uncover any fingerprints on the gun. However, he also explained that it is not unusual for him to be unable to recover such fingerprints, stating that he is only able to do so on 25% of the weapons he tests. Mr. Hegman similarly testified that, of the many weapons he has examined for latent fingerprints in his career, very few have had recoverable fingerprints.

Defense counsel called as witnesses the two passers-by who aided Detective Stout, a father and son named Clayton Carroll III and Clayton Carroll IV. Mr. Carroll IV testified that he and his father pulled into the rear of the Wawa in a van on the early morning of July 13, 2004, and that he was the person handed the pepper spray by Detective Stout. Mr. Carroll IV also testified that when he first came onto the scene, he noticed a lighter and a watch on the ground of the parking lot next to Detective Stout and Jurbala. He also recalled seeing a shirt and undershirt on the ground, within six feet of Detective Stout and Jurbala. Although he did not recall seeing a gun among those items, Mr. Carroll IV explained that he did not closely examine the area where these items were, because that area was not close to where he was standing and because his attention was focused on assisting Detective Stout. Mr. Carroll IV testified that he first saw the gun after Detective Stout had placed Jurbala near the wall of the Wawa, when Carroll IV handed the detective a notepad on which he and his father had written their contact information. At that point, he saw Detective Stout holding a gun in his hand, and Stout was either checking the gun or clearing it. Mr. Carroll IV asked, "Where did that come from?" and, according to his recollection, Stout answered that he found it in Jurbala's coat. Mr. Carroll IV also recalled hearing Jurbala state that the gun was not his.

Mr. Carroll III provided similar testimony, stating that he recalled seeing a watch with a broken band and a lighter on the ground after arriving on the scene, but he did not recall seeing any clothing on the ground. However, Mr. Carroll III explained that he did not take a close look at the ground at that point in time, because he was focused on helping Detective Stout. Carroll III stated that he first saw the firearm in Detective Stout's hands after he and his son had written their contact information in the notebook and returned it to the detective. Carroll III testified that

7

the detective either said that the gun fell out of Jurbala's coat or that he (Stout) found the gun in the coat. Carroll III also noted that his view of Jurbala and Stout was obscured by his van during the time he was writing down his contact information, and that, at some point, he heard Jurbala state that the gun was not his.

Both Carrolls testified that they did not see anything to indicate that Detective Stout had planted the gun or that he placed the gun on the ground. Both men said that they had often visited this Wawa, that the store was always well kept with no litter strewn about, and that they had never before seen a gun lying in the parking lot. Both Carrolls also testified that the gun recovered that evening was not their gun.

### B. Claim One: Counsel Failed to Call Melissa Wilson as a Witness

Jurbala asserts that he was outside the Wawa between 1:45 and 2:00 a.m. on the morning of his arrest because he was waiting for his friend Melissa Wilson to arrive. He contends that he provided this information to defense counsel, who then confirmed Jurbala's story, and that defense counsel's failure to call Melissa Wilson as a witness amounted to ineffective assistance. According to Jurbala, without Melissa Wilson's testimony regarding the true reason as to why he was standing outside the Wawa on that morning, the jury was more likely to think that Jurbala was planning to rob the store and therefore find it likely that he possessed a gun at the time.

In response, defense counsel states that the story Jurbala told him differs from the story Jurbala presents in his § 2255 motion. Specifically, prior to trial, Jurbala told counsel that he was planning on stopping by Ms Wilson's house *after* being at the Wawa, not that Ms. Wilson was planning to meet him at the Wawa. Counsel then spoke with Ms. Wilson, who stated that Jurbala's story did not make sense because she would not have been awake at the time he was

8

planning to stop by her residence. Given this information, counsel decided that Ms. Wilson's testimony would not be beneficial to the defense theory and therefore did not call her as a witness.

After reviewing Jurbala's instant contention in context with the aforementioned record, the court concludes that claim one is unavailing. As a preliminary matter, an attorney's determination regarding which witnesses to call is strategic, and Jurbala has not provided anything to rebut the strong presumption of reasonableness applicable to counsel's strategic decision to not call Ms. Wilson. *See, e.g., Henderson v. DiGuglielmo*, 138 Fed. Appx. 463, 469-470 (3d Cir. 2005). In turn, it is well-settled that an attorney need not pursue an investigation that would be fruitless or one that might be harmful to the defense,[3] and in this case, Ms. Wilson's testimony would have either contradicted the defense theory or would have provided no benefit at all to that theory. And finally, despite Jurbala's overly speculative assertion regarding the jury's possible reaction to the testimony he believed Ms. Wilson would have provided, Jurbala cannot satisfy the prejudice prong of *Strickland*. Even if she had testified, Ms. Wilson would not have testified in the manner he asserts, and she also would not have provided any information about the gun's possessor or owner. Therefore, he cannot demonstrate a reasonable probability that the result of his proceeding would have been different but for counsel's failure to call Ms. Wilson as a witness. Accordingly, the court concludes that Jurbala's first ineffective assistance of counsel claim does not warrant relief.

---

[3] *See Strickland*, 466 U.S. at 691.

### C. Claim Two: Counsel Failed to Call Expert Witness Regarding Fingerprints

In his second claim, Jurbala complains about counsel's failure to call an expert to rebut the testimony provided by the government's two expert witnesses regarding the difficulty in recovering fingerprints off a gun. Jurbala explains how Detective Stout testified that Jurbala was very sweaty at the time of the arrest, and he contends that counsel should have called an expert witness to explain "how easy it is to get DNA [evidence] off of a gun" if the person holding the gun was sweaty or slippery. Defense counsel, however, responds that he did not call an expert witness on this issue because the government's failure to recover fingerprints from the firearm and its failure to demonstrate a direct link between Jurbala and the gun actually benefitted Jurbala's case.

Claim two does not warrant relief. To begin, counsel's failure to call an expert witness does not constitute *per se* ineffective assistance. The Supreme Court recently reiterated that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter*, - S.Ct. -, 2011 WL 148587, at *17 (Jan. 19, 2011).

Moreover, counsel reasonably concluded that he did not need to call a separate expert witness for the defense, as demonstrated by the fact that counsel was able to use the testimony provided by the government's expert witness Hegman to bolster the defense theory. For instance, on cross-examination, defense counsel elicited Hegman's testimony that the chances of finding fingerprints on a gun would be increased if the person handling the gun was sweating or slippery. Then, in closing, defense counsel pointed out how the government's experts were

unable to find Jurbala's fingerprints on the gun even though Jurbala had been sweating profusely during the Wawa incident, and then underscored the lack of a link between Jurbala and the gun.

Additionally, Jurbala has failed to demonstrate the requisite prejudice under *Strickland*. It is well-settled that prejudice caused by ineffective assistance of counsel cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere speculation about the possible testimony. *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001). Here, Jurbala has not identified a particular expert who would, or could, have rebutted the government's expert testimony regarding the difficulty of obtaining fingerprints from a gun; he has not identified a particular expert witness who would, or could, have testified that sweat increases one's ability to obtain fingerprints from a gun; and he has not identified a particular expert witness who would, or could, have performed additional DNA testing on the gun that would have eliminated him as the possessor of the gun.

Accordingly, given Jurbala's failure to satisfy either prong of the *Strickland* test, the court will deny claim two as meritless.

### D. Claim Three: Counsel Failed to Cross-Examine Witness About Suspects

Maryland state police reports provided to the defense during discovery showed that two brothers from Delaware stole the firearm at issue in Maryland in December 2003. Jurbala asserts that he had no connection to, or relationship with, the two brothers. Consequently, in his third claim, Jurbala argues that defense counsel should have cross-examined Detective Stout about the possible link between those two brothers and the firearm, because without such information the "jury was led to believe no one else but [him] could have had that gun." In other words, Jurbala

asserts that defense counsel should have raised the possibility of "other suspects" during his cross-examination of Detective Stout.

This argument is unavailing. As noted in defense counsel's affidavit, counsel asked an investigator to determine if there was any way to tie the individuals suspected of stealing the firearm at issue to the vicinity of the Wawa on the date in question, but the investigator was unable to uncover any facts to support Jurbala's "other suspects" theory. Without any evidence to support Jurbala's theory, Jurbala cannot establish the unreasonableness of counsel's failure to suggest, through cross-examination or otherwise, that one (or both) of the two brothers dropped the gun behind the Wawa. Similarly, Jurbala cannot show that he was prejudiced by counsel's failure to raise this unsupported "other suspects" theory. Accordingly, the court will deny claim three.

### E. Claim Four: Defense Counsel Failed to Challenge the Validity of Detective Stout's Search of the Parking Lot

In his fourth claim, Jurbala contends that defense counsel provided ineffective assistance by failing to challenge the validity of Detective Stout's search of the parking lot during the trial, waiting instead to challenge the sufficiency of the search in a post-conviction motion for acquittal. Jurbala appears to believe that, given Detective Stout's other testimony during the trial and the nature of the arrest, the detective did not have sufficient time or ability to thoroughly search the parking lot before he encountered Jurbala. Jurbala argues that, "if said search was challenged at trial by counsel, there is a reasonable probability that the outcome would have been different."

The court is not persuaded by Jurbala's argument. Even if defense counsel failed to explicitly question the thoroughness of Detective Stout's search on cross-examination, counsel did, in fact, use the information gleaned from Stout's overall testimony[4] to challenge the thoroughness of the search during his closing argument, stating:

> Dewey Stout did not get out of his automobile and search the rear parking lot of the Wawa prior to encountering Mr. Jurbala. How do you search a parking lot? How do you search a parking lot with all sorts of nooks and crevices on which something could be up against a wall and in which when you take it back her, you see little posts behind here where you could see something behind the posts. Is that how you search a parking lot? You drive through the parking lot.
>
> **Ladies and gentlemen of the jury, he did not search that parking lot prior to encountering Mr. Jurbala.** A parking lot at night with lights. **A gun could have been anywhere.**

*Id.* at p. 199 (emphasis added). In light of defense counsel's explicit challenge to the sufficiency of Stout's search, Jurbala cannot establish a reasonable probabilty that there would have been a different result but for counsel's failure to ask Stout further questions during cross-examination. *Strickland*, 466 U.S. at 693. Accordingly, the court will deny claim four.

### F. Claim Five: Counsel Failed to Investigate Surveillance Tapes or Weather Report

In his fifth claim, Jurbala contends that counsel rendered ineffective assistance by failing to obtain surveillance videotapes from Wawa in order to contradict Detective Stout's testimony

---

[4]During the prosecution's direct examination, Detective Stout stated that he was "looking as he was driving" in the parking lot "to see if there were any objects, like a bag, particularly on the ground," but that he did not see anything. (D.I. 32, at p. 31.) The detective explained that he did not hear anything drop onto the pavement during his struggle with Jurbala, nor did he see a gun fall from Jurbala's person. *Id.* at p. 42. Then, when cross-examined by defense counsel, Detective Stout again described how he drove into the parking lot, came upon Jurbala, and then exited the police vehicle. On re-direct examination, Detective Stout explained how he clearly looked at the ground while he was driving through the parking lot, but he did not see any firearms or other objects. *Id.* at pp. 77-78.

13

that Jurbala was repeatedly walking from the front of the store to the back of the store. The record reveals that defense counsel asked an investigator to obtain surveillance tapes from Wawa, but that no such tapes existed. Consequently, counsel did not provide ineffective assistance by failing to obtain non-existent tapes.

Jurbala also argues that counsel should have obtained a record of the weather for the day of his arrest to demonstrate that the weather was inclement, thereby providing a legitimate reason as to why Jurbala was wearing a heavy coat in the middle of July. Defense counsel's affidavit explains that counsel did obtain a weather report for the day in question, but decided not to use it because it was not beneficial to Jurbala's case. Given Jurbala's failure to provide any support for his contention that it had been raining, windy, and very cool just hours before his arrest, the court has no reason to question defense counsel's conclusion. Therefore, the court concludes that counsel's actions in this respect were not objectively unreasonable, nor were they prejudicial to Jurbala.

### G. Claim Six: Counsel's Decision to Call the Carrolls as Witnesses

Jurbala contends that defense counsel provided ineffective assistance by calling Mr. Carroll III and Mr. Carroll IV as witnesses for the defense, stating that defense counsel could have obtained the same benefit derived from the Carrolls' testimony through his cross-examination of Detective Stout. Jurbala asserts that calling the Carrolls as witnesses for the defense prejudiced him, because it allowed "two potential [gun-owner] suspects to be eliminated in front of the jury." (D.I. 74, at p.16.)

To the extent this argument merely asserts that defense counsel could have been more efficient in his trial presentation, "inefficiency" does not rise to the level of constitutionally

14

ineffective assistance of counsel. To the extent Jurbala contends that defense counsel should have treated the Carrolls as "potential suspects," the court rejects the contention as completely specious. And finally, Jurbala cannot demonstrate the requisite prejudice under *Strickland*. Both Carroll men testified that, although they saw Jurbala's coat, shirts, lighter, and watch on the parking lot pavement, they did not see any firearm amongst those items; rather, the first time they saw the firearm was when it was in Detective Stout's hands. As such, the Carrolls' testimony actually supported the defense theory that reasonable doubt existed regarding the element of possession. Accordingly, the court will deny this claim as meritless.

### H. Claim Seven: Counsel's Failure to Raise on Appeal the Issue of Statement Made by Prosecutor During Closing

Jurbala contends that the government engaged in prosecutorial misconduct during the closing argument by stating, "Now the government submits that if you find Detective Stout's testimony to be credible, then you must convict the defendant of the crime charged." Jurbala also contends that defense counsel performed ineffectively by failing to raise this issue of prosecutorial misconduct on direct appeal.

As a preliminary matter, the court notes that the prosecutorial misconduct claim is procedurally defaulted due to Jurbala's failure to present the claim to the Third Circuit in his direct appeal. However, Jurbala asserts ineffective assistance of counsel as cause for his default, and the court cannot resolve the *Strickland* claim without first resolving whether the underlying legal issue is meritorious. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991)(ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause for a

procedural default). Therefore, the court will proceed to the merits of the prosecutorial misconduct issue raised in claim seven.

In order to prevail on this claim of prosecutorial misconduct, Jurbala must demonstrate that the prosecutor's statement affected the fairness of the trial because it manipulated or misstated the evidence, or that it implicated other specific rights. *See United States v. Young*, 470 U.S. 1, 11 (1985). Jurbala, however, has failed to satisfy this standard. As noted by the government on sidebar when the defense objected to the government's statement during the trial, "the only evidence the government presented about possession was Dewey Stout. So his credibility is a key issue in this case. If the jurors believe him, then they have to believe that the defendant is guilty." (D.I. 32, at p. 178.) Defense counsel replied that the testimony provided by the two Carroll men created other issues. Nevertheless, after explaining that the "Carrolls were not used to support Detective Stout's theory and the prosecution's theory of the case," the court concluded that the prosecutor's statement was proper and overruled defense counsel's objection. *Id.* at p. 179.

Jurbala has not presented anything in this proceeding to alter the court's earlier conclusion that the prosecutor's statement was proper. To begin, the Third Circuit has consistently held that a "prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010). The prosecutor in this case did not misstate or manipulate the evidence; rather, she merely highlighted the fact that the prosecution's whole case rested on Detective Stout's testimony.

Moreover, even if the court were to conclude that the prosecutor's statement was improper, the statement did not prejudice Jurbala's substantive rights. Simply stated, the prosecutor's statement "in no way shaped the development of the record evidence [] or the trial strategy pursued by either party," because it was uttered at the end of Jurbala's trial. *United States v. Liburd*, 607 F.3d 339, 345 (3d Cir. 2010).

And finally, the court instructed the jury that the lawyers' statements in the case were not evidence, and that it was their job to make their own independent determinations about whether the government had met its burden of proof. (D.I. 32, at pp. 172-174.) As a general rule, courts presume that the jurors follow their instructions, and the court discerns no reason to presume otherwise in this case. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987). For these reasons, the court concludes that Jurbala has failed to present a viable prosecutorial misconduct claim.

Having determined that Jurbala's prosecutorial misconduct claim lacks merit, it necessarily follows that defense counsel did not provide ineffective assistance by not raising this issue on direct appeal. Accordingly, the court will deny claim seven in its entirety.

## VI. PENDING MOTIONS

During the pendency of this proceeding, Jurbala has filed a motion to strike the government's answer, a motion for an evidentiary hearing, and a motion to appoint counsel. (D.I. 66; D.I. 75; D.I. 76.) For the reasons set forth above, the court has concluded that Jurbala's § 2255 motion lacks merit, and that an evidentiary hearing is not warranted. Accordingly, the court will deny the three aforementioned motions as moot.

## VII. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court is denying Jurbala's § 2255 motion as meritless. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VIII. CONCLUSION

The court concludes that Jurbala is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHARLES D. JURBALA, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 08-47-GMS |
| | ) | Cr. A. No. 04-94-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS HEREBY ORDERED that:

1. Movant Charles D. Jurbala's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**. (D.I.51; D.I. 60.)

2. Jurbala's motion to strike the government's answer (D.I. 66.), his motion for an evidentiary hearing (D.I. 75.), and his motion to appoint counsel (D.I. 76.) are **DENIED** as moot.

3. A certificate of appealability will not issue for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

4. The clerk of the court is directed to close the case.

Feb 25, 2011
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE